UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

POLY-FLEX CONSTRUCTION, INC.,
a Texas corporation,

      Plaintiff,

      v.

NEYER, TISEO & HINDO, LTD., d/b/a NTH
CONSULTANTS, a Michigan corporation,

      Defendant.

_____

Case No. 1:07-cv-1090

HONORABLE PAUL L. MALONEY

**OPINION and ORDER**

**Granting in Part and Denying in Part the Defendant's Motion
for a Contractual Award of Attorney's Fees and Costs;
Directing the Defendant to File Additional Documentation to Justify Hours and Hourly Rates**

The defendant moved to dismiss the complaint for failure to state a claim. The motion was fully briefed, and the court heard oral argument on September 4, 2008. Pursuant to the court's September 5, 2008 order, the parties submitted supplemental briefs as to whether PFC's breach-of-contract and contractual-indemnification claims (counts one and three) are time-barred. By opinion and order issued October 4, 2008, the court held that all four claims were time-barred by Michigan's statute of limitations governing professional malpractice. Accordingly, the court granted defendant's motion and dismissed the complaint with prejudice.

The defendant now moves for an award of attorney's fees and costs pursuant to the contract. Plaintiff filed an opposition brief, defendant filed a reply, and both parties requested oral argument.

The court does not see the necessity for oral argument at this time.  For the reasons that follow, the court will grant in part and deny in part defendant NTH's motion for an award of attorney's fees and costs.

In defendant NTH's favor, the court holds that (1) PFC is equitably estopped from contending, prior to its position throughout this extensive litigation, that it is <u>not</u> a party to the NTH-Landfill contract; (2) PFC is treated as a party to the NTH-Landfill contract, which obligates the losing party to pay reasonable fees and costs; and (3) NTH's award is not limited to the expenses incurred in this court, but also includes the expenses it incurred in the Texas and Arizona courts.

However, in PFC's favor, the court will require NTH to submit far more detailed, itemized billing records as to the work done by its counsel in the Arizona courts, the Texas courts, and in this court.  Also in PFC's favor, the court strongly advises NTH to fully justify the requested hourly rates of its Texas counsel – or submit lower requested rates.  After NTH files the itemized bills, PFC will have two weeks to file a response, if it chooses, contesting the reasonableness of the hourly rates or the amount of time expended on each task.

For the facts of the underlying dispute, the court refers to its prior opinion.  In December 2006, PFC sued NTH in Texas state court.  NTH removed to the U.S. District Court and moved to dismiss based on lack of personal jurisdiction.  After jurisdictional discovery, PFC voluntarily dismissed in June 2007.  Shortly thereafter, PFC sued NTH in Arizona state court.  NTH removed to the U.S. District Court, which dismissed without prejudice for lack of personal jurisdiction.  PFC filed the complaint here in November 2007 and the amended complaint in March 2008.

## LEGAL STANDARD:  A FEDERAL COURT'S INTERPRETATION OF STATE LAW

The contract contains a clause providing that issues relating to the contract will be governed and construed in accordance with Arizona law. *See* Am Comp, Ex A § 4.14. NTH contended that under Arizona choice-of-law rules, an Arizona state court would apply Michigan's substantive law, MTD at 2 n.2, and NTH did not dispute that contention; the court applied Michigan law. The court also applies Michigan law to determine whether NTH is entitled to attorney's fees and costs.

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, – F. Supp.2d –, –, 2008 WL 828112, *14 (W.D. Mich. 2008) (Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Griffin, J.) (citation omitted)). If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts: "In anticipating how the state supreme court would rule, 'we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently.'" *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation omitted)). In determining what is the controlling law of the State, a federal court also "*may* give weight" to the decisions of the State's trial courts, *Bradley v. GMC*, 512 F.2d 602, 605 (6th Cir. 1975) (citing *Royal Indem. Co. v. Clingan*, 364 F.2d 154 (6th Cir. 1966)), especially when the trial court's decision is consistent with state appellate decisions, *Bradley*, 512 F.2d at 605.

## PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as that state's courts would. *See ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14 (citing *Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988) ("[O]ne Supreme

Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . . required a federal

court to ascribe the same precedential force to a New Jersey trial court decision that such a decision

would receive in that state's court system under the peculiarities of New Jersey law.")).  If a state

court would not be bound by a particular state-court decision, then neither is this court.  *ARS*, – F.

Supp.2d at –, 2008 WL 828112 at *14 (citing *King v. Order of United Commercial Travelers of*

*America*, 333 U.S. 153, 161 (1948) ("a federal court adjudicating a matter of state law in a diversity

suit is, in effect, only another court of the State; it would be incongruous indeed to hold the federal

court bound by a decision which would not be binding on any state court.") (citation omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals

has precedential value under the rule of stare decisis."  This subsection makes no distinction based

on when the decision was issued..  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals

must follow the rule of law established by a prior published decision of the Court of Appeals *issued*

*on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by

a Special Panel of the Court of Appeals as provided in this rule."  *ARS*, – F. Supp.2d at –, 2008 WL

828112 at *14 (emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of

Appeals accords precedential value to *all* of its prior published decisions, regardless of when they

were issued.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *14.  When a post-November 1, 1990

published Court of Appeals decision conflicts with a *pre*-November 1, 1990 published Court of

Appeals decision, however, the *post*-November 1, 1990 decision prevails.  *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were

*both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed the matter at issue. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at \*15 (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W. 2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of that same court, regardless of when they were issued. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at \*15 (citing *Iqbal v. Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R. 7.215(J)(1))). Nonetheless, this court may consider and follow unpublished state-court decisions, so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan Court of Appeals. *See Republic-Franklin Ins. Co. v. Bosse*, 1996 WL 301722, \*5 n.4 (6th Cir. June 4, 1996) (although unpublished decisions are not generally controlling under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in deciding diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a diversity case by an unreported decision of a State court of original jurisdiction, we may give weight to this [unreported] decision of the chancery [court] in determining what is the controlling [state] law.")).

Finally, a federal court's interpretation of state law is not binding. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at \*14 (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2d Courts § 225 (1965). Accordingly, this court will seriously consider our Circuit's interpretation of state law but is not bound by it. *See ARS*, – F. Supp.2d at –, 2008 WL 828112 at \*15.

**This Court's Dismissal of PFC's Complaint as Time-Barred**

Regarding count one (breach of contract) and count three (contractual indemnification), the parties argued over whether Landfill's assignment of its rights to PFC was valid, and if so, *when* it became effective. This court expressly declined to rule on the validity of the assignment. *See PFC*, 2008 WL 4534428 at *11 and n.1. Instead, the court held that even if the assignment was valid and effective prior to the date that PFC asserted these claims, both contract claims were time-barred (along with the two non-contract claims). The court first held that all four claims were subject to M.C.L. § 600.5838 / § 600.5805(6), the period generally governing malpractice claims against non-medical professionals. *See id.* at *11-21. The court then determined that the claims were untimely under that limitation period. *See id.* at *22-24.[1]

**Defendant NTH's Fee Application**

<u>Is NTH Entitled to Attorney's Fees and Costs?</u>

NTH seeks to recover not only the attorney's fees and costs that it incurred in *this* court, but also the fees and costs it incurred in two other federal district courts defending against these same claims. PFC first sued in Texas state court in December 2006, and NTH removed to the U.S. District Court for the Northern District of Texas. *Poly-Flex*, 2008 WL 4534428 at *7. After jurisdictional discovery – including depositions and requests for production of documents – NTH moved to dismiss for lack of personal jurisdiction, whereupon PFC voluntarily dismissed its action without prejudice in June 2007. *Id.*

---

[1]

As to count four, equitable indemnification, NTH contended that the claim fails because PFC's admitted inadequate construction of the leak-detection system renders it an "active wrongdoer" and "actively negligent", both of which bar an assignee from securing equitable relief in Michigan. Because the court held the complaint is untimely, it expressly declined to consider whether the equitable-indemnification claim also lacked merit. *See PFC*, 2008 WL 4534428 at n.19.

PFC next sued in Arizona state court. *Poly-Flex*, 2008 WL 4534428 at *7. On August 16, 2007, NTH wrote to PFC, stating NTH's position that it was not subject to Arizona's long-arm jurisdiction and that it had not subjected itself to Arizona jurisdiction by agreement or otherwise. *See* NTH's Application for an Award of Attorney's Fees and Costs filed October 20, 2008 ("NTH Fee App"), Ex. B - Affidavit of Stephen P. Ormond, Esq. dated October 20, 2008 ("Ormond Aff") ¶ 6 (citing Attachment 1). NTH's letter stated, in its entirety:

> This will confirm our conversation of a few days ago in which I advised you that we see no basis for the allegation in paragraph II of Plaintiffs' Complaint that NTH Consultants does business in Maricopa County, Arizona. In fact, NTH is not subject to Arizona's long-arm jurisdiction and has not, via agreement or otherwise, subjected itself to Arizona jurisdiction. As we discussed, the Arizona choice of law provision in NTH's alleged agreement with Central Sanitary Landfill does not provide a basis upon which personal jurisdiction may be obtained. If you are aware of any basis to obtain personal jurisdiction, please let me know.

> Also as we discussed, NTH's deadline for response [to the complaint] in August 31, 2007. We would much prefer to avoid the time and expense of filing a response, however, the deadline is fast approaching. In that connection, please advise your client regarding the potential implications of Rule 11, Fed. R. Civ. P., Rule 11(a) ARCP and ARS § 12-349 which, taken together, impose a duty to base allegations, including those pertaining to your jurisdiction, upon reasonable inquiry and with substantial justification. In addition, due to the apparent assignment of the alleged contract between Central Sanitary Landfill and NTH, your client has exposure pursuant to paragraph 4.3 of that contract, which imposes costs and attorneys' fees for unproven claims. If forced to continue this litigation, NTH intends to avail itself of all available remedies.

> Thank you for taking the time to speak with me the other day. I hope this matter can be resolved without further delay.

Ormond Aff, Attachment 1 at 1-2.

On August 22, 2007, PFC's counsel responded as follows:

> Thank you for your correspondence of August 16, 2007. I believe our conversation was very amicable. At no time did you make any references to Rule 11 of the Federal or Arizona Rules of Civil Procedure, or A.R.S. § 12-349. In the future, I would ask that you refrain from making any legal threats concerning this matter.

> Allied Waste Industries, NTH's client, is headquartered at 18500 North Allied Way,
> Phoenix, Arizona, 85054.  In order for NTH Consultants ("NTH") to obtain its CQA
> contract with Central Sanitary Landfill, Inc., we have a good faith basis to believe
> and assert that there must have been some contacts between NTH and the State of
> Arizona which would confer jurisdiction [on] an Arizona Court.  If this is incorrect,
> would you please provide some affirmative evidence to the contrary?

Ormond Aff, Attachment 2.  On August 28, 2007, NTH responded that it had investigated and

learned that all of its own work on the Landfill project had taken place in Michigan (none in

Arizona).   NTH wrote:

> Thank you for your August 22 letter, which I received on August 27.  Your letter
> asserts that you and your client have a good faith basis to believe and assert that in
> order for NTH Consultants to obtain its contract with Central Sanitary Landfill "there
> must have been some contacts between NTH and the State of Arizona which would
> confer jurisdiction to an Arizona court."  To check this point, I called the former
> NTH employee who was responsible for finalizing the contract between NTH and
> Central Sanitary Landfill, Inc.  He advised me that the point of contact with Central
> Sanitary Landfill was Debby Nurmi, located in Coopersville, Michigan.  She
> apparently solicited NTH's proposal and supplied NTH with the Central Sanitary
> Landfill, Inc. form contract for that purpose.  All of this activity took place in
> Michigan.
>
> In reference to the choice of law clause in the Central Sanitary Landfill contract, I
> refer you to *Halloum v. Intel*, 2003 U.S. Dist LEXIS 203645 (D. Ariz. 2003); *Siren
> Gaming, LLC v. Arviso*, [153 F. App'x 420] (9th Cir. 2005); *Coremetrics, Inc[.] v[.]
> AtomicPark.com LLC*, 370 F. Supp. 2d 1013 ([D. Ariz.] 2005).  These cases establish
> beyond question that the execution of a contract containing a law selection clause
> does not confer jurisdiction.
>
> If you have information on either of these points that contradicts my understanding,
> please let me know.  As we discussed, our client is having to expend time and
> resources, now for the second time, to challenge jurisdiction when it is obvious that
> no jurisdiction exists.  The point of my previous letter was not to depart from the
> amicability of our discourse, but simply to put your client on notice regarding the
> unreasonable approach it is following with regard to this jurisdictional side show.
>
> Our deadline for removal is this Friday followed by our motion to dismiss a few days
> later.  I hope that your client will see fit to dismiss this action voluntarily before we
> file the motion to dismiss.

Ormond Aff, Attachment 3.  On August 31, 2007, PFC's counsel responded by letter, stating simply,

"[m]y client insists it has a good faith basis to believe that NTH has had, or currently has, contacts within the State of Arizona, which would in[s]ure jurisdiction by an Arizona court."  Ormond Aff, Attachment 4.

Then, NTH removed to the U.S. District Court for the District of Arizona, and in October 2007 that court granted NTH's motion to dismiss the complaint without prejudice for lack of personal jurisdiction.  *Poly-Flex*, 2008 WL 4534428 at *7.  Because of the exchange of correspondence between counsel prior to that motion, NTH contends that "the attorneys' fees and costs incurred to obtain eventual dismissal in the Arizona case were incurred solely due to Poly-Flex's intransigence even after Poly-Flex was notified that NTH would pursue attorneys fees and costs under the contract."  Ormond Aff ¶ 9.

Amount of Attorney's Fees and Costs

NTH seeks reimbursement of Michigan and Arizona counsel's legal work at the following rates: $185-235 per hour for partners ("shareholders"), $125-175 for associate attorneys, and $85 per hour for paralegals and law clerks.  *See* Ormond Aff ¶ 12 and Attachment 5.  NTH argues that these rates are consistent with rates charged for similarly complex litigation in those states; reasonable in light of the factors set forth in Michigan Rules of Professional Conduct R. 1.5; and reasonable in light of the State Bar of Michigan's 2007 "Economics of Law Practice" survey results for hourly billing rates.  *See* Ormond Aff ¶ 13.  NTH seeks reimbursement at a far higher hourly rate, however, for its Texas counsel.

Not counting fees and costs incurred to file this fee application, NTH seeks $199,162 in attorney's fees and $2,414.42 in costs.  *See* Ormond Aff ¶ 14.  NTH breaks down the requested fees and costs as follows (rounded to the nearest dollar):

Pre-Litigation:          $  14,196
Texas case:              $  32,187
Arizona case:            $  42,217
Michigan case:           $110,561

*See* Ormond Aff ¶ 14.

<u>Contractual Authority for Award of Fees and Costs.</u>

Preliminarily, the court finds that NTH's motion for fees and costs was timely, because it was filed within 14 days of the entry of judgment as required by FED. R. CIV. P. 54(d)(2).

NTH seeks an award of fees and costs pursuant to a provision of the Landfill-NTH contract which provides, "In the event that one party makes a claim against the other, at law or otherwise, and then fails to prove such claim, then the prevailing party shall be entitled to all costs, including attorneys' fees incurred in defending against the claim." NTH Fee App at 2 (citing FED. R. CIV. P. 54(d)(2)).

Michigan follows the American Rule, which states that attorneys' fees are not recoverable as costs or damages unless expressly allowed by statute, court rule, contract, or a common-law exception[2] provides to the contrary. *Smith v. Khouri*, 751 N.W.2d 472, 477 (Mich. 2008) (Taylor, C.J.) (citing *Nemeth v. Abonmarche Dev., Inc.*, 576 N.W.2d 641, 652 (Mich. 1998) and *Haliw v. Sterling Hts.*, 691 N.W.2d 753, 756 (Mich. 2005)).

However, contractual provisions obligating the losing party to pay reasonable attorney's fees

---

[2]

For example, the Michigan Supreme Court has created the "common-fund" exception, which applies only when a prevailing creates or protects a common fund that benefits himself and others. *Nemeth v. Abonmarche Dev., Inc.*, 576 N.W.2d 641, 651 n.11 (Mich. 1998) (citing *Popma v. Auto. Club Ins. Ass'n*, 521 N.W.2d 831, 838 (Mich. 1994)). In equity, the Michigan Supreme Court holds that is unfair to allow others to benefit at the expense of the prevailing party without contributing to the costs incurred in securing the common fund. *Id.* NTH has not suggested that the common-fund exception to the American Rule applies here.

-10-

are generally valid and judicially enforceable under the same standard as other contractual provisions. *See City of Otsego v. Walters*, 2007 WL 4125367, *4 (Mich. App. Nov. 20, 2007) (p.c.) (P.J. Murphy, JJ. Smolenski & Meter) ("'The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees, and such provisions are judicially enforceable.'") (quoting *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 555 N.W.2d 733 (Mich. App. 1996)); *see also Johnson v. Johnson*, 2008 WL 4005028, *3-4 (Mich. App. Aug. 28, 2008) (p.c.) (C.J. Saad, P.J. Wilder, J. Smolenski) (citing *Fleet Business Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644, 647 (Mich. App. 2007) and *Wiley v. Wiley*, 543 N.W.2d 64 (Mich. App. 1995)).

The court further notes that a successful motion to dismiss a complaint on statute of limitations grounds renders the movant a "prevailing party" for purposes of a contractual "loser pays" attorney-fee provision. *See, e.g., Citizens Ins. Co. of America v. KIC Chems., Inc.*, 2007 WL 1238893 (W.D. Mich. Apr. 27, 2007), *awarding fees and costs*, 2007 WL 2902213 (W.D. Mich. Oct. 1, 2007) (Richard Alan Enslen, J.) (awarding contractual attorney's fees to defendant who successfully moved for summary judgment, where grant of summary judgment as to one claim was based on holding that claim was time-barred under statute of limitations).

**PFC's first legal objection to the fee application is that** FED. R. CIV. P. 54(d)(2)(A)

provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages."* Contractual attorney fees are "considered damages, not costs." *Central Transport* [*, Inc. v. Fruehauf Corp.*, 362 N.W.2d 823, 829 (Mich. App. 1984)]; *Fleet Business Credit, LLC [v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644, 647 (Mich. App. 2007)]. Thus, the rule does not apply "where the substantive law provides for the recovery of fees as an element of damages, for instance whenever an attorney's fee provision is contained in a contract and not a

-11-

statute." *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138 at **7 (6ᵗʰ Cir;. 1996) (Table); *Lynch v. Sease*, Not reported in F. Supp.2d, 2006 WL 1206472 (E.D. Ky. 2006).

PFC's Opp at 1.  Michigan case law does hold that an award of attorneys' fees pursuant to a contractual loser-pays provision "is considered an element of damages, not costs." *Tacco Falcon Point, Inc. v. Clapper*, 2008 WL 4684088, *2 (Mich. App. Oct. 23, 2008) (p.c.) (P.J. Meter, JJ. Talbot & Murray) (citing, *inter alia*, *Fleet Business Credit*, 735 N.W.2d at 647).

The rest of this objection by PFC, however, is difficult to comprehend.  PFC goes on to state, "NTH's claim requires resolution of contested issues that do not fit comfortably within Rule 54(d)'s streamlined framework."  PFC's Opp at 2.  But a decision cited by PFC itself had no trouble awarding contractual attorney fees on a Rule 54(d) motion following the grant of a motion for summary judgment.  And it would be absurd to hold that because attorney's fees are an element of damages, a party who prevails on motion rather than at trial cannot recover fees because the fact finder never addressed this component of damages "at trial."  If anything, a party that prevails by motion, without even the need to go to trial, is in a sense "*more* successful" than the party who cannot show a ground for defeating the claim without the need for a trial (e.g., a lack of jurisdiction, time bar, lack of genuine issue of material fact, etc.).  Accordingly, where it is not possible to quantify contractual attorney's fees in the original proceeding – as it was not possible here – a post-judgment motion is appropriate because such fees are not, under the circumstances, damages "to be proved at trial."  *See Lynch v. Sease*, 2006 WL 1206472, *4 (E.D. Ky. May 2, 2006) (citing *Rissman v. Rissman*, 229 F.3d 586, 588 (7ᵗʰ Cir. 2000).

**PFC's second legal objection to the fee application is that NTH cannot treat PFC as a party to the NTH-Landfill contract for purposes of the fee provision, when NTH all along has maintained that PFC was not the assignee of the Landfill's rights under that contract.**  PFC

contends that NTH should be judicially estopped from arguing directly contrary to its former litigation position in this case.  The United States Supreme Court holds that

> "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' *Davis v. Wakelee*, 156 U.S. 680, 689 . . . (1895).  This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 . . . (2000)."

*Zedner v. US*, 547 U.S. 489, 504 (2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).[3]  The judicial-estoppel doctrine "'preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit the exigency of the moment.'"  *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)).

On the other hand, "the doctrine of judicial estoppel is to be applied with caution."  *Opland v. Kiesgan*, 594 N.W.2d 505, 511 (Mich. App. 1999) (P.J. Richard Allen Griffin, Neff, <u>Bandstra</u>) (citing, *inter alia*, *Paschke v. Retool Indus.*, 519 N.W.2d 441, 444 (Mich. 1994)).  Judicial estoppel is an extraordinary remedy, to be invoked only "when a party's inconsistent behavior otherwise will result in a miscarriage of justice.  It is not meant to be a technical defense for litigants seeking to

---

[3]

This court is arguably bound to apply Michigan law even as to the application of judicial estoppel to these federal proceedings.  Nonetheless, it is appropriate to consult Sixth Circuit decisions, because the Michigan Court of Appeals has stated, "We turn to federal precedents to supplement the available Michigan precedents in light of our Supreme Court's reliance on federal precedents in its discussions of the judicial estoppel doctrine." *Opland v. Kiesgan*, 594 N.W.2d 505, 512 n.10 (Mich. App. 1999) (citing *Paschke*, 519 N.W.2d at 444 (Mallett, J., for the Court) and *id.* at 450 (Robert P. Griffin, J., dissenting) and *Lichon v. American Universal Ins. Co.*, 459 N.W.2d 288, 292-93 (Mich. 1990)).

derail potentially meritorious claims." *Opland*, 594 N.W.2d at 511 (internal quotation marks and alterations omitted) (citations to Third Circuit decisions omitted).

Although the judicial-estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test, the Supreme Court advises that

> "several factors typically inform the decision whether to apply the doctrine in a particular case:  First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . .  A third consideration is whether a party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Zedner*, 547 U.S. at 504 (quoting *NH v. Maine*, 532 U.S. at 750-51) (citations and internal quotation marks omitted).[4]

The first factor for the application of judicial estoppel against NTH is present, because NTH is now arguing that Landfill validly assigned its contractual rights and obligations to PFC, whereas NTH previously argued that there was no valid assignment.  NTH has not suggested a way to

---

[4]

    *See, e.g., Steel Assocs., Inc. v. City of Detroit*, 2005 WL 2656648 (Mich. App. Oct. 18, 2005) (p.c.) (P.J. Owens, Fitzgerald, Schuette):

> In *Merkur I*, the city admittedly objected to the presentation and recovery of any damages sustained by plaintiff, and argued that only those damages sustained by Merkur as a direct consequence of its ownership interest in City Steel could be presented.  The trial court agreed with the city's position.  Thus, the city's position in the present case – that plaintiff's claims are barred because they could have been asserted in *Merkur I* – is inconsistent with its position in *Merkur I*.

> To accept the city's position now would result in a miscarriage of justice because plaintiff would be deprived of any opportunity to recover the rest of its damages.  We therefore conclude that, even if there is privity between plaintiff and Merkur, the city is judicially estopped from advancing its res judicata / collateral estoppel argument against plaintiff in this case.

*Id*. at *5 (paragraph break added).

reconcile the two positions, and the court sees none. *Contrast Lorillard Tobacco*, 546 F.3d at 757 (finding that party's position was not necessarily inconsistent, let alone clearly inconsistent, with its prior position) (citing *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998) (rejecting application of judicial estoppel where litigant's position was "not necessarily inconsistent with" its prior position and was "open to interpretation")).

The third factor for the application of judicial estoppel against NTH is also present, because NTH would impose an unfair detriment on PFC – the imposition of substantial attorney's fees under the contract – if permitted to argue that PFC was a party to the NTH-Landfill contract as assignee of Landfill.

But the second factor for judicial estoppel is not present: NTH never succeeded in persuading this court of its earlier, contrary position. This court declined to rule on whether Landfill validly assigned its contractual rights and duties to PFC, because PFC's claims were time-barred anyway. PFC acknowledges that this second factor is not present. *See* PFC's Opp at 4 n.3 ("The doctrine may not be directly applicable under the more restrictive Sixth Circuit cases which require that a party succeeded on the prior argument in order for judicial estoppel to apply.") (citing *Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620, 624 (6th Cir. 2005)).

PFC maintains that "the first and third factors [still] weigh in favor of precluding NTH from reversing its position." PFC's Opp at 4. But NTH does not identify any Michigan or Sixth Circuit decisions which have applied judicial estoppel where the party never succeeded in convincing the court of its inconsistent prior position. On the contrary, the Michigan Supreme Court holds that "the mere assertion of inconsistent positions is not sufficient to invoke estoppel . . . ." *Paschke v. Retool Indus.*, 519 N.W.2d 441, 444 (Mich. 1994) (emphasis added), *followed by Morales v. State Farm*

-15-

*Mut. Auto. Ins. Co.*, – N.W.2d –, –, 2008 WL 2185371, *__ (Mich. App. May 27, 2008). Rather, there must generally be "*some indication that the court in the earlier proceeding accepted that party's position as true.*" *Id.* Likewise, the Sixth Circuit's general rule is that "judicial estoppel applies only when a party attempts to take 'a position inconsistent with one *successfully* and unequivocally asserted by that same party in an earlier proceeding.'" *US v. Hammon*, 277 F. App'x 560, 566 (6th Cir. 2008) (quoting *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994)) (emphasis added); *see also Wical v. Int'l Paper Long-Term Disability Plan*, 191 F. App'x 360, 369 (6th Cir. 2006) (p.c.) (C.J. Boggs, Gibbons, Griffin) ("'if a party *wins a suit on* one ground, it can't turn around and in further litigation with the same opponent repudiate the ground in order to win a further victory'") (quoting *Ladd v. ITT Corp.*, 148 F.3d 753, 755 (7th Cir. 1998)) (emphasis added).

In short, under Michigan and Sixth Circuit precedent, judicial estoppel should rarely be applied when the party targeted did not convince the court of its prior inconsistent position,[5] and PFC certainly has not shown any compelling equitable reason for estopping NTH here in the absence of satisfaction of the second factor.

On the contrary, the court concludes that it is PFC which must be equitably estopped from changing positions on the validity of the Landfill-to-PFC assignment. After all, it is not NTH which

---

[5]

*Accord Verhoff v. Time Warner Cable, Inc.*, 2008 WL 4691794, *5 (6th Cir. Oct. 24, 2008) (Martin, Rogers, Sutton) ("The obvious problem for Verhoff then is that Time Warner did not *succeed* on this claim, and any 'judicial acceptance' (or reliance thereon) came in the form of the district court's ruling in favor of Verhoff. We thus proceed to the merits.");

*Hammon*, 277 F. App'x at 5667 ("[T]he sentencing court in the present case did not address, much less accept, the accuracy of the IRS's tax assessment. We therefore cannot conclude that the sentencing court 'accepted' Hammon's earlier position. * * * The district court therefore did not err in finding that Hammon was not judicially estopped from denying the accuracy of the Government's assessments.").

initiated this action or otherwise imposed unnecessary litigation costs on PFC. It is PFC which erred by bringing its claims in districts where NTH was not subject to personal jurisdiction, and then by bringing its claims later than Michigan law permits. In so doing, PFC unnecessarily imposed substantial legal expenses on NTH, all the while vigorously arguing that it was Landfill's assignee and thus entitled to exercise rights under the Landfill-NTH contract. Accordingly, PFC cannot now be heard to complain that it was *not* a party to the contract, in order to escape responsibility for the harm which its numerous legal and tactical errors inflicted on NTH.

**PFC's third legal objection to the fee application is that it did not fail to prove its claims, and the NTH-Landfill contract entitles the prevailing party to attorney's fees only "[i]n the event that one party makes a claim against the other, at law or otherwise, *and then fails to prove such claim*."** PFC's Opp at 5 (quoting NTH-Landfill Contract § 4.3). PFC reads this language to mean that failure of its claims *on their merits* is a condition precedent to an award of attorney's fees. PFC's Opp at 5-6. The court rejects this interpretation as strained and implausible.

Absent extrinsic evidence to the contrary, the court finds that the parties to the NTH-Landfill contract reasonably would take the plain and ordinary meaning of the phrase "fails to prove such claim" to mean simply "failed to prevail on" or "failed to win judgment on" the claim. There is no reason to believe that NTH and Landfill intended the prevailing party to be saddled with the cost of defending against unsuccessful claims merely because the claims were dismissed on non-merits grounds such as the statute of limitations. If NTH and Landfill wished to circumscribe the definition of prevailing party in such a way, they could have included such a limitation in the attorney-fee provision. But they did not. Sitting in the place of a Michigan state court, this court "will not read into an agreement terms that have not been placed there by the parties." *Technical & Crystal, Inc.*

-17-

*v. VW of America, Inc.*, 2008 WL 2357643, *4 (Mich. App. June 10, 2008) (p.c.) (P.J. Zahra, JJ.

Cavanagh & Jansen) ("Had the parties wished to state in ¶ 7 that VW was only entitled [to] hire

plaintiff's employees in good faith and for permanent, full-time positions, they certainly could have

done so.  However, no such provisions were included in the contract, and we will not read into an

agreement terms that have not been placed there by the parties.") (citing *Cottrill v. Michigan Hosp.

Serv.*, 102 N.W.2d 179, 181-82 (Mich. 1960) and *Trimble v. Metro. Life Ins. Co.*, 9 N.W.2d 49, 53

(Mich. 1943)).[6]  This court cannot, under the guise of interpretation, write the NTH-Landfill CQA

contract the way PFC wishes they had written it.  *See Lombardi v. Metro. Life Ins. Co.*, 260 N.W.

160, 162 (Mich. 1935) ("We cannot under the guise of construction reform a policy so as to write

a new contract.").

Moreover, reading "fails to prove such claim" to exclude non-merits dismissal makes

particularly little sense given that the dismissal of claims as time-barred leaves open the possibility

that they also lacked merit.  When claims are untimely, it is inefficient, and generally unwise, for

a court to opine on their merits unnecessarily.  In other words, if a party asserts claims which are

---

[6]

*See, e.g., Knox v. Knox*, 59 N.W.2d 108, 111-12 (Mich. 1953) ("It is significant that the
contract executed by the parties did not in specific terms provide that there should be no obligation
on defendant's part unless and until plaintiff had carried out each and all of his premises.
[D]efendant might have insisted on the inclusion of such a provision by his attorney in drafting the
instrument . . . .  This was not done, and we may not read into the contract any such mutual intent.");

*T & S Distributors, LLC v. Michigan Bell Tel. Co.*, 2008 WL 724084, *10 (Mich. App. Mar.
18, 2008) (p.c.) (P.J. Whitbeck, JJ. Jansen & Davis) ("The parties evidently saw fit to refrain from
defining the term 'local exchange service' in their agreement.  We will not read into the agreement
statutory or legal definitions that have not been placed there by the parties.");

*Harbor Park Market, Inc. v. Gronda*, 743 N.W.2d 585, 589 (Mich. App. 2007) ("Since the
parties failed to include an express limitation in the language of the condition precedent . . . we will
not judicially impose one ourselves.").

both untimely and lack merit, it is proper for the defendant to point out that the claims must be dismissed as untimely, and for the court to resolve the case on that basis alone.

In addition, reading the phrase "fails to prove such claim" to exclude statute-of-limitations dismissal would effectively penalize the prevailing party for exercising its right not to be sued on claims which the Legislature has declared to be stale. Under PFC's interpretation, a defendant could not even risk asserting a statute-of-limitations defense, for fear that the defense would succeed! The court, following customary prudent practice, would decline to reach the merits, and the defendant would be left with tens or hundreds of thousands of dollars in attorney's fees occasioned by the plaintiff's dereliction in failing to bring its claims in a timely fashion. In other words, the defendant would be forced to choose between asserting a statute-of-limitations defense *or* forgoing the defense in the hope of recouping attorney's fees if it wins on the merits. That would be a perverse result, not be sanctioned unless such an intent appears clearly in the language of the contract or the parties' past practice. Nothing in the record suggests that NTH and Landfill (the contracting parties) intended the party defendant to face such an unusual and counter-intuitive choice.

Finally, just as a plaintiff which secures all the relief it seeks is no less a prevailing party because it did not "need" all its alternative theories of liability, a defendant which avoids all liability is no less a prevailing party because it did not "need" all its alternative defenses. The Michigan Court of Appeals recently explained this analogy,

> In *Van Zanten v. H VanderLaan Co., Inc.*, 200 Mich. App. 139, 141, 503 N.W.2d 713 (1993), the plaintiff pleaded three different damage theories. Because each theory sought to recover for the same injury and recovery under any theory would have allowed recovery of the full measure of her damages, our Court held that it was necessary for the plaintiff to "prevail only on one theory in order to be considered a prevailing party." *Id.* Further, plaintiff was entitled to plead alternative claims under MCR 2.111(A)(2). *See, also, Abel v. Eli Lilly & Co.*, 418 Mich. 311, 335, 343 N.W.2d 164 (1984).  * * *

> A defendant who raises alternative theories of defense and entirely avoids liability on one of them is similar to a plaintiff who raises alternative theories of recovery and obtains recovery under one of them. * * *

*Burkhart Assocs., Inc. v. Nowakowski*, 2008 WL 4367528, *6-7 (Mich. App. Sept. 25, 2008) (p.c.) (P.J. Borrello, JJ. Murray & Fort Hood).

**PFC's fourth legal objection to the fee application is that even if NTH is entitled to an award of fees under the contract, it is entitled only to fees incurred in *this* action, not fees incurred in the Arizona and Texas actions.** PFC's Opp at 7. PFC relies on the proposition that the court may award fees from other proceedings only "if the work was 'useful and of a type ordinarily necessary' to secure the relief requested in the primary proceeding." PFC's Opp at 7 (quoting *Grand Traverse Band of Ottawa & Chippewa Indians v. Michigan DNR*, 149 F.3d 1183, 1998 WL 385891, *3 (6th cir. July 1, 1998) (Jones, Nelson, Ryan) and citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) (party must prove that fees incurred in the other litigation resulted in work product that was actually used in the instant litigation and "that the time spent on other litigation was inextricably linked to the issues raised in the present litigation")).

But neither of the decisions cited by PFC for this proposition was applying Michigan law, and neither cited any Michigan decisions. *Grand Traverse Band* was applying federal common law governing fee awards under 42 U.S.C. § 1988, and *Gulfstream* was applying federal common law governing fee awards under the federal Clayton Antitrust Act. Not a single Michigan state court has cited either *Grand Traverse Band* or *Gulfstream*. Therefore, PFC has not given this court any basis for predicting that the Michigan Supreme Court would adopt the test expressed in the federal decisions, *Grand Traverse Band* and *Gulfstream*.

-20-

As NTH correctly notes, and PFC elsewhere concedes, the contours of the fee award must be determined solely according to the terms of the NTH-Landfill contract, i.e., not by any tests applicable to *statutory* fee awards. *See* NTH Reply at 8-9 (quoting PFC's Opp at 2 ("its request must be determined solely by the contractual terms")). The contract contains no requirement that fees must have been expended on work that was "useful and of a type ordinarily necessary to secure the relief requested in the primary proceeding", and PFC presents no authority suggesting that the Michigan Supreme Court would read such a qualifier into the contract. Accordingly, the court holds that Michigan law presents no impediment to the awarding of fees and costs that NTH incurred defending against PFC's claims in the Arizona and Texas courts.

Finally, the court finds that it was PFC's ill-advised litigation strategy which required NTH to defend against these claims in three different States. So far as the record reflects, NTH was available to be sued in Michigan all along. It was PFC which chose to file suit in one state where NTH lacked sufficient contacts to be subject to the court's jurisdiction (according to the U.S. District Court for the Northern District of Texas), and one state where PFC apparently concluded that NTH lacked sufficient contacts to be subject to the court's jurisdiction (Arizona, as evinced by PFC's voluntary dismissal of its action in the U.S. District Court for the District of Arizona following jurisdictional discovery). PFC should not be surprised that its contractual obligation to reimburse NTH is now construed to include the expense of the Texas and Arizona actions it unnecessarily instigated – and then obstinately refused to drop when correctly advised of valid jurisdictional defects.

### Michigan State Law Governs Determination of Reasonable Attorney Fees

Because NTH has shown, as a matter of law, that it is entitled to an award of attorney's fees

under the NTH-Landfill contract, the court must determine whether the proposed fees are reasonable.    Following judgment on state-law claims in a diversity case, the assessment of the reasonableness of proposed attorneys' fees is a question of state law.  *See Shimman v. Int'l Union of Operating Engineers*, 744 F.2d 1226, 1237 n.17 (6th Cir. 1984) ("Federal courts must generally apply state law regarding attorney fees to a state law claim pendent to a federal claim.") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975)); *Reed v. GM*, 2008 WL 4083177, *5 (N.D. Ohio Sept. 3, 2008) ("When a district court exercises supplemental jurisdiction over an attorneys fee dispute, state law applies.") (citing, *inter alia*, *Kalyawongsa v. Moffett*, 105 F.3d 283, 289 (6th Cir. 1997) (applying Tennessee law to the question of whether the attorney-fee lien was reasonable or excessive)).

Accordingly, it is inappropriate for NTH to cite federal decisions as authority on attorney-fee issues without showing that the federal decision in question has been adopted or quoted with approval by a Michigan court (preferably in a published decision of a Michigan appellate court). *See, e.g.,* NTH Fee App at 5-6 (relying on *Barnes v. Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) for twelve-factor test for propriety of granting a fee multiplier or enhancement to reward "exceptional success").  The court disregards the federal case law cited by NTH and looks instead solely to Michigan case law.

Moreover, NTH is wrong to rely on federal decisions stating that when "'the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee to which counsel is entitled."  NTH's Fee App at 5 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (emphasis in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984))).  The

Michigan Court of Appeals has flatly stated, "we decline to hold that the product of multiplying reasonable hours by a reasonable hourly rate is presumed to provide a reasonable fee." *Smolen v. Dahlmann Apts, Ltd.*, 463 N.W.2d 261, 264 (Mich. App. 1990). The trial court is merely *permitted* to consider what the reasonable hourly rate is, and it may consult the Michigan Bar Journal's annual "Economics of Law Practice Survey." *Id.*

NTH also erroneously relies on federal decisions stating that multipliers may be permissible in some cases of "exceptional success." The Michigan Court of Appeals does not proceed by way of multipliers, but rather incorporates the results achieved as one among many factors in the test for fixing a reasonable fee, in its discretion. *See Smolen v. Dahlmann Apts, Ltd.*, 463 N.W.2d 261, 264 (Mich. App. 1990) ("Likewise, we decline to hold that plaintiffs are *entitled* to an upward [adjustment] based on the contingency of payment and to reflect exceptional success. The *Crawley* [211 N.W.2d 217 (Mich. App. 1973)] factors allow for consideration of the results achieved in the lawsuit.").

Likewise, NTH is wrong to rely on a federal decision stating that "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." NTH's Fee App at 6 (quoting *Crosby v. Bowater, Inc. Ret. Plan for Salaried Employees of Great Northern Paper, Inc.*, 262 F. Supp.2d 804, 816 (W.D. Mich. 2003) (Enslen, J.), *vac'd on subject-matter jurisdiction grounds*, 2004 WL 5389834 (6th Cir. Dec. 29, 2004)). The plaintiff in *Crosby* brought an ERISA claim, with no pendent state-law claims, and the district court was determining fees under federal statutory and common law, not Michigan state law. No Michigan courts have cited *Crosby*.

<u>Finally, the court most emphatically rejects the notion, in NTH's brief, that this court should</u> <u>consider "the financial resources and ability of the parties" or "the equities of the situation" in</u> <u>fashioning a fee award</u>.  *See* NTH Fee App at 5 (quoting *Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252, 262 (E.D. Mich. 1985)).  In addition to NTH's failure to present Michigan authority for this notion, considering the parties' financial resources would usurp the parties' contractual freedom.  NTH and Landfill exercised their freedom of contract in drafting the contract, and they voluntarily chose not to condition the existence or amount of a fee award on the losing party's financial resources.  If they wished to make fee awards proportional to the losing party's financial resources, they could have said so in the contract.  But they did not.

In the absence of statutory authority, it is not for the court to impose its own subjective view on how big a fee award is "fair" given the relative financial situation of the parties and the resultant "equities."  *Contrast Olsawka v. Ponnampalam*, 2008 WL 4958568, *10 (Mich. App. Nov. 20, 2008) (p.c.) (P.J. Beckering, JJ. Borrello & Davis) (appeal following judgment of divorce) ("On remand, the trial court should determine whether defendant is 'unable to bear the expense of the action, and that the other party is able to pay,' pursuant to MCL 3.206(C)(2)(a).").

**Under Michigan law, the party seeking attorney's fees bears the burden of proving that** **the requested fees are reasonable.**  *Smith v. Khouri*, 751 N.W.2d 472, 478 (Mich. 2008) (Taylor, C.J.) (citing *Petterman v. Haverhill Farms, Inc.*, 335 N.W.2d 710, 712 (Mich. App. 1983) (citing *In re Eddy Estate*, 92 N.W.2d 458 (Mich. 1958))) (footnote omitted).  The court must consider the "totality of special circumstances applicable to the case at hand."  *Smith*, 751 N.W.2d at 478 (citing *Smolen v. Dahlmann Apts, Ltd.*, 463 N.W.2d 261, 264 (Mich. App. 1990) and *Hartman v. Assoc'd Truck Lines*, 444 N.W.2d 159, (Mich. App. 1989)).

**An itemized bill in itself is not always sufficient to establish that the requested fees are reasonable, and the court need not accept such bills on their face.** *Petterman*, 335 N.W.2d at 712 (citing *Sturgis S& L Ass'n v. Italian Village, Inc.*, 265 N.W.2d 755, 758 (Mich. App. 1978)).

Finally, "a trial court 'should normally hold an evidentiary hearing when the opposing party challenges the reasonableness of a fee request.'" *Van Elslander v. Thomas Sebold & Assocs, Inc.*, 2008 WL 5077011, *19 (Mich. App. Dec. 2, 2008) (P.J. Schuette, JJ. Borrello & Gleicher) (quoting *Head v. Philips Camper Sales & Rental, Inc.*, 593 N.W.2d 595 (Mich. App. 1999)). It is not error to award fees without a hearing, however, when "'the parties [have] created a sufficient record to review the issue, and the court fully explain[s] the reasons for its decision.'" *Id. See, e.g., Frye v. Consolidated Rail Corp.*, 2008 WL 4330248, *6 (Mich. App. Sept. 23, 2008) (p.c.) (P.J. Schuette, JJ. Zahra & Owens) (where trial court failed to hold an evidentiary hearing in response to losing party's challenge to reasonableness of attorney fee award, the Court of Appeals vacated the award and remanded "for the trial court to make specific findings, consistent with *Smith*, on the attorney fees plaintiff sought to recover").

<u>Factors to Be Considered, and Sequence for Consideration.</u>

This court must "begin its analysis by determining the fee customarily charged in the locality for similar legal services . . . ." *Smith v. Khouri*, 751 N.W.2d 472, 479 (Mich. 2008) (Taylor, C.J.). To determine the customary fee for similar legal services, the court uses reliable surveys or other credible evidence of the applicable legal market. *Smith*, 751 N.W. at 479. The court multiplies the customary fee by the reasonable number of hours expended. *Id.* "The number produced by this calculation" is not presumed to be the reasonable fee, but it "should serve as the starting point for calculating a reasonable attorney fee." *Id.* The Michigan Supreme Court believes that having the

trial court consider these two factors first will lead to greater consistency in fee awards.  *Id.*

After multiplying the customary hourly rate by the reasonable number of hours expended, the court should determine whether an upward or downward adjustment is appropriate by considering the remaining factors set forth in MICH. R. PROF. CONDUCT 1.5(a) and *Wood v. Detroit Auto. Inter-Ins. Exch.*, 321 N.W.2d 653 (Mich. 1982).  *Smith*, 751 N.W.2d at 479-80.  Namely, to determine whether to accept the "starting point" figure of (reasonable hourly rate multiplied by reasonable hours) or adjust it, the court must consider and "briefly discuss" its view of these factors:

(1) the professional standing, reputation, ability, and experience of the attorney;
(2) the skill, time and labor involved;
(3) the amount in question and the results achieved;[7]
(4) the novelty and difficulty of the case;
(5) the expenses incurred;
(6) the nature and length of the professional relationship with the client;
(7) the likelihood, if apparent to the client, that the lawyer's acceptance of the particular employment will preclude other employment by the lawyer;
(8) the time limitations imposed by the client or by the circumstances;
(9) whether the fee is fixed or contingent.

*Smith*, 751 N.W.2d at 480.[8]  The court may consider a factor not listed in *Smith*, *Wood*, and MICH. R. PROF. CONDUCT 1.5(a), but if it does so, it must "expressly indicate this and justify the relevance and use of the new factor."  *Smith*, 751 N.W.2d at 480 n.15.

---

[7]

"The lead opinion in *Smith* . . . indicated that factor 3 is not an appropriate consideration 'in determining a reasonable attorney fee for case-evaluation sanctions.'  However, this conclusion was not adopted by a majority of the justices."  *Wilson v. Keim*, 2008 WL 2861665, *17 n.23 (Mich. App. July 24, 2008) (p.c.) (P.J. Meter, JJ. Talbot & Servitto).

[8]

Factors 1-6 come from *Wood v. DAIIE*, 321 N.W.2d 653 (Mich. 1982).

Portions of factors 1, 2, 3, 4 and 6 also come from MICH. R. PROF. CONDUCT 1.5(a).

Factors 7-9 come from MICH. R. PROF. CONDUCT 1.5(a) alone.

<u>NTH's Documents in Support of Fee Request</u>

In support of its request for fees and costs incurred in the Texas litigation, NTH submits the affidavit of the billing partner from the firm that served as its Texas counsel. *See* Affidavit of Yvette Ostolaza, Esq., Partner in the Dallas, TX office of Weil Gotshal & Manges LLP, dated October 16, 2008 ("Texas Counsel Aff"). Attached to the Texas counsel's affidavit are:

(1) an invoice summary dated February 14, 2007, showing that it billed NTH 7.9 hours of partner time at $695 per hour, 33.3 hours of one associate time at $540 per hour, 53.8 hours of another associate's time at $330 per hour, and 14.7 hours of paralegal time at $195 per hour, for a total of 109.7 hours yielding a fee of $44,093 ............... plus $1,308.98 in costs, for a total of $45,401.98;

(2) an invoice summary dated March 29, 2007, showing that it billed NTH 2.8 hours of partner time at $695 per hour, 19.2 hours of one associate's time at $540 per hour, 17.8 hours of another associate's time at $330 per hour, and no paralegal time, for a total of 39.8 hours yielding a fee of $18,188 ............... plus $969.35 in costs, for a total of $19,157.35;

(3) an invoice summary dated May 11, 2007, showing that it billed NTH 3.4 hours of partner time at $695 per hour, 31.5 of one associate's time at $540 per hour, 16.4 hours of another associate's time at $330 per hour, and no paralegal time, for a total of 51.3 hours yielding a fee of $24,785 ............... plus costs of $1,967.24, for a total of $26,752.24;

(4) an invoice summary dated June 20, 2007, showing that it billed NTH for 1.3 hours of partner time at $695 per hour, 28.1 hours of one associate's time at $540 per hour, 27.5 hours of another associate's time at $330 per hour, and no paralegal time, for a total of 56.9 hours yielding a fee of $25,152.50 ............... plus costs of $3,693.20, for a total of $28,845.70;

(5) an invoice summary dated July 23, 2007, showing that it billed NTH for 4.5 hours of partner time at $695 per hour, 25.5 hours of one associate's time at $540 per hour, and 84.3 hours of another associate's time at $330 per hour, for a total of 114.3 hours yielding a fee of $44,716.50 ............... plus costs of $2,491.30, for a total of $47,207.80;

(6) an invoice summary dated August 10, 2007, showing that it billed NTH for half an hour of partner time at $695 per hour, 0.7 of an hour of one associate's time at $540 per hour, and 0.3 of another associate's time at $330 per hour, for a total of 1.5 hours yielding a fee of $824.50 ............... plus costs of $529.28, for a total of

$1,353.78.

*See* TX Counsel Aff, Attachments at 1-2, 3-4, 5-6, 7-8, 9-10 and 11-12.

In support of its request for fees and costs incurred in the Arizona litigation, NTH submits the affidavit of a partner from the firm that served as its Arizona counsel.  *See* Affidavit of P. Douglas Folk, Esq., Partner in Folk & Associates, P.C., of Phoenix, AZ, dated October 14, 2008 ("Arizona Counsel Aff").  Attached to the Arizona counsel's affidavit is an invoice summary showing that it billed NTH for 12.4 hours of partner time at $290 - 295 per hour and 1.2 hours of associate time at $160 per hour, adding up to 13.6 hours and a fee of $3,711.50, plus Lexis and WestLaw charges of $138.59, for a total of $3,850.09.  *See* AZ Counsel Aff, Attachments at 1-2.

NTH has also submitted an affidavit confirming that all three law firms were paid in full for the amounts noted above.  *See* NTH's Fee App, Ex. J (Affidavit of NTH President Kevin Hoppe).

**NTH fails to provide sufficient detail for the court to conclude that the requested fees are reasonable.**  NTH cannot expect the court simply to blindly accept its generalized summaries of the number of hours worked by its counsel.  Fairness to PFC requires a more searching inquiry than that.  The court has the obligation to scrutinize line-by-line bills to determine whether *each NTH attorney and paralegal* spent a reasonable amount of time on each discrete task, such as reading an adversary's brief, researching the law and writing its own brief, preparing for oral argument, traveling to oral argument, attending oral argument, etc.[9]  *See Bonkowski v. Allstate Ins. Co.*, – N.W.2d –, –, 2008 WL 4603554, *__ (Mich. App. Oct. 2, 2008) (p.c.) ("This preliminary

---

[9]

*Contrast Van Elslander v. Thomas Sebold & Assocs, Inc.*, 2008 WL 5077011, *19 (Mich. App. Dec. 2, 2008) (P.J. Schuette, JJ. Borrello & Gleicher) ("In this case, we conclude that the circuit court did not abuse its discretion in awarding TSA the $14,7000 it requested because (1) TSA supplied *a thorough and detailed summary of the legal expenses incurred by its counsel* after plaintiff's rejection of the case evaluation award . . . .").

number may be adjusted upward or downward, based on the factors found in the Michigan Rule of Professional Conduct, 1.5(a) and *Wood* . . . .  This process must be employed for each attorney for whom [the prevailing party] claims a right of fee reimbursement . . . ."); *cf. Green v. Belfor USA Group, Inc.*, 2008 WL 4684070 (Mich. App. Oct. 23, 2008) (p.c.) (P.J. Fort Hood, JJ. Talbot & Borrello) (vacating fee award where trial court failed to determine reasonable hourly rate and reasonable number of hours to determine baseline figure, and then failed to individually examine the other *Smith* factors).[10] [11]

The court also finds that NTH has failed to carry its burden of submitting sufficient evidence, beyond the mere affidavit of counsel, that the high hourly rates charged by its Texas counsel were reasonable: $695 per hour for Texas partner and $540 and $330 per hour for the Texas associates, compared to only $185 per hour for the Michigan firm's partner and $155 per hour for the Michigan firm's associates.  *In toto*, NTH's Texas counsel charged a whopping $200,905 in fees and costs simply to review the complaint and contest personal jurisdiction in that State!  As the Michigan Supreme Court recently cautioned, "reasonable fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in the region."  *Smith*, 751 N.W.2d at 478

---

[10]

*Cf. Michigan Technical Representatives, Inc. v. Mold-Ex, Inc.*, 2008 WL 344524, *2 (E.D. Mich. Feb. 6, 2008) (applying Michigan law) (denying fee application without prejudice where applicant's affidavit failed to comply with E.D. MICH. LCIVR 54.1.2, which requires fee applicant to submit an affidavit "setting out in detail the number of hours spent *on each aspect of the case*") (emphasis added).

[11]

One of the cases that NTH submits to show that its documentation is adequate are inapposite. First, NTH cites *Soltysiak v. UNUM Provident Corp.*, 480 F. Supp.2d 970, 976 (W.D. Mich. 2007) (Bell, C.J.), which awarded attorney fees to a party who prevailed on a claim under ERISA, 29 U.S.C. § 1001 *et seq.*  There were no Michigan-law claims involved in *Soltysiak*, and Chief Judge Bell was applying federal statutory and common law, not Michigan state law.  No Michigan courts have cited *Soltysiak*.

(citation omitted).  PFC provides an illuminating comparison of the attorneys fees it incurred vis-a-vis the attorneys fees NTH incurred:

|       | Texas      | Arizona   | Michigan   | Total      |
|-------|------------|-----------|------------|------------|
| NTH   | $200,905   | $ 46,067  | $110,561   | $357,533   |
| PFC   | $ 23,000   | $ 3,780   | $ 27,900   | $ 54,680   |

PFC's Opp at 11.  The great disparity between the fees paid by the two parties in every jurisdiction does not compel the conclusion that NTH's requested fees are unreasonable, but it does not tend to support NTH's argument.  It becomes difficult for NTH to explain how it needed to spend more than *six times* as much as PFC.

NTH's reply asserts, unconvincingly, that PFC has not shown that NTH's supporting documents are inadequate.  NTH cites not a single Michigan case for this argument.  First, NTH relies on the proposition that the documents it has submitted establish a rebuttable presumption of reasonableness, yet it relies again on a federal decision that has *never* been adopted by Michigan courts on this issue.  *See* NTH Reply at 9 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  Only two Michigan decisions have twice cited *Del Val Citizens' Council*, and not for this proposition.[12]

---

[12]

*See Smith v. Khouri*, 751 N.W.2d 472, 478 (2008) (Taylor, J., for the Court, joined by Young, J., with Corrigan & Markman, JJ., concurring in pertinent part) ("'[T]hese [attorney fee-shifting statutes] were not designed as a form of economic relief to improve the lot of attorneys.'") (quoting *Del Val Citizens' Council*, 478 U.S. at 565);

*Smith*, 751 N.W.2d at 481 n.19 (Taylor, J., for the Court, joined by Young, J., with Corrigan & Markman, JJ., concurring in pertinent part) ("We reiterate that the goal of awarding attorneys fees under MCL 2.403 is to reimburse a prevailing party for its 'reasonable' attorney fee; it is not intended to 'replicate exactly the fee an attorney could earn through a private fee arrangement with his client.'") (quoting *Del Val Citizens' Council*, 478 U.S. at 565);

*Smith*, 751 N.W.2d at 488 (Cavanagh, J., dissenting, joined by Weaver & Kelly, JJ.) (criticizing *Del Val Citizens' Council*, 478 U.S. at 564);

-30-

Second, NTH's reply relies on a D.C. Circuit decision – never cited by a single Michigan court, according to WestLaw – for the proposition that "when a party 'attempts to rebut a case for a requested rate, it must do so by equally specific countervailing evidence.'  In this fashion, '[j]ust as the applicant submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application." NTH's Reply at 9 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) and *id.* at 1338 (Tamm, J., concurring)).  In any event, the court finds that PFC's objections to NTH's fee application are sufficiently specific, articulate, and reasoned to convince the court it cannot quantify a fee award without first receiving much more detailed billing documents from NTH.


### ORDER

For the foregoing reasons, defendant NTH's motion for an award of attorney's fees and costs [document # 36] is **GRANTED in part and DENIED in part.**

Plaintiff is **LIABLE** for the reasonable attorney's fees and costs incurred by the defendant in relation to proceedings in this court.

Plaintiff is **ALSO LIABLE** for reasonable attorney's fees and costs incurred by the defendant in prior proceedings on these claims in the state and federal courts of Arizona and Texas.

No later than 28 calendar days from the date of this Order, **NTH SHALL FILE** detailed, itemized bills showing the amount of time which each of its counsel spent on each particular,

---

*Gainey v. Sieloff*, 398 N.W.2d 498, 508 (Mich. App. 1986) (in determining what constitutes a reasonable fee under 42 U.S.C. § 1988, which is a federal issue, the trial court on remand should consider federal law) (citing generally *Del Val Citizens' Council*, 478 U.S. 546), *vac'd*, 405 N.W.2d. 877 (Mich. 1987).

discrete task in each court.

NTH **SHALL REQUEST** reimbursement for Texas counsels' work at an hourly rate lower than the rates previously requested in its motion ($695 for a partner's work, and $540 and $330 for associates' work) **UNLESS NTH SUBMITS** evidence that the previously requested Texas rates are reasonable in the Dallas, Texas market (ideally, recent court decisions awarding fees at rates equal to or higher than the defendant's revised request here).

No later than 14 calendar days from the service of NTH's submission, plaintiff PFC **MAY FILE** a response contesting the reasonableness of the number of hours spent on any particular task and/or the reasonableness of the hourly rate sought for any particular lawyer or paralegal's work.

The court **RESERVES** the right to conduct an evidentiary hearing or decide the matter on the papers.

**It is so ordered this 14th day of January 2009.**

/s/Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge